UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MARY McKENNA,
                Plaintiff,

     - against -                                  **COMPLAINT AND
                                                      JURY DEMAND**

THROGS NECK EXTENDED CARE FACILITY
and SENTOSACARE, LLC,                       06 Civ. 7737 (LAK)(DF)

                Defendants.
-----------------------------------------------------------------x

        **Plaintiff, Mary McKenna, by her attorneys Kraus & Zuchlewski LLP,** as and for her Complaint, alleges as follows:

## INTRODUCTION

1.     Ms. McKenna, the former Director of Social Services at the Throgs Neck Extended Care Facility ("Throgs Neck" or the "Facility"), a nursing home owned by SentosaCare, LLC ("Sentosa"), brings this retaliation action against Throgs Neck and Sentosa. Ms. McKenna alleges that, due to her having engaged in protected activity, she has been subjected to adverse action by being terminated from employment.

## JURISDICTION

2.     This Court has jurisdiction pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.*, ("Title VII"). Jurisdiction as to the causes of action arising under §296 of the New York Executive Law ("Executive Law") and Title 8, §8-107 of the Administrative Code and Charter of the City of New York ("Administrative Code") is conferred upon this Court by and under the principles of supplemental jurisdiction pursuant to 28 U.S.C. §1367.

## VENUE

3. The parties to this action reside in and/or regularly do business within the jurisdiction of the Court. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c), and 42 U.S.C. §2000e--5(f)(3).

## THE PARTIES

4. Plaintiff Mary McKenna is a United States citizen and a resident of Bronx, New York.

5. The Throgs Neck Extended Care Facility is a 205 bed nursing facility located in The Bronx, New York City. Throgs Neck is one of nineteen nursing facilities in the New York City metropolitan area owned and managed by SentosaCare LLC, a privately-owned entity with an office and principle place of business in Woodmere, New York.

## PROCEDURAL BACKGROUND

6. On June 22, 2005, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendants subjected her to retaliation for having engaged in protected activity and discriminated against her on the basis of her gender.

7. On June 26, 2006, following an extensive investigation, the EEOC issued a Determination finding that there was reasonable cause to believe that Plaintiff had been terminated because of her sex and in retaliation for having complained of sex discrimination.

8. The EEOC issued a conciliation statement on July 3, 2006, which outlined its proposed remedies for resolving the issues raised in Plaintiff's EEOC Charge.

9. Counsel for Defendants advised the EEOC in a letter dated July 11, 2006, that Throgs Neck did not intend to respond to the EEOC's conciliation proposal.

10. The EEOC issued a Notice of Right to Sue (Conciliation Failure) to Plaintiff on July 14, 2006.

11. In accordance with Title VII, §8-502 of the Administrative Code, Ms. McKenna has served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York.

## STATEMENT OF FACTS

12. Plaintiff was hired by Throgs Neck as its Director of Social Service on March 1, 2004.

13. Among other responsibilities, Plaintiff supervised the work of the Facility's two social workers. She reported to Administrator George Stops.

14. Soon after she began her employment, Plaintiff audited the social work sections of each of the Facility's residents' charts. She discovered that documentation was poor and out-of-date on many of the charts, and reported this problem to Mr. Stops.

15. Plaintiff further observed that the performance of the Facility's social workers was seriously deficient. Mr. Stops agreed with her assessment, and acknowledged that two particular social workers would have to be terminated. One of the two social workers resigned in late May, and Plaintiff promptly hired a replacement.

16. Early in her employment, Plaintiff met Throgs Neck's Director of Recreation, Curvie McMurray, in the facility's lobby. When she mentioned to him, with other employees within earshot, that she had forgotten her office key, McMurray responded by saying "you should be spanked."

17. McMurray's comment foreshadowed his future behavior. Thereafter, he frequently grabbed Plaintiff by the arm and kissed the top of her head.

18. Although Plaintiff consistently made clear to McMurray that his behavior was unwelcome, he responded to her protests by laughing.

19. Plaintiff told Personnel Coordinator Roseann Colengelo that she was highly offended by McMurray's conduct toward her. Ms. Colengelo stated that she had also witnessed and been subjected to improper, offensive behavior by McMurray and intended to speak with him about it.

20. Plaintiff observed that she was not only the female at Throgs Neck who was harassed by McMurray. He frequently engaged in unwanted physical touching of other women employees as well as residents, and often made crude sexual remarks to females at the Facility.

21. In April 2004, Plaintiff made her first complaint of sexual harassment to Mr. Stops. Specifically, she told him that she strongly objected to continually being kissed on the head by McMurray and wanted it to cease. Mr. Stops took no action to remedy the situation.

22. Nonetheless, Mr. Stops often praised Plaintiff's work and told her that he was glad she worked at the Facility.

23. In June 2004, McMurray expanded his improper behavior to Care Plan Meetings attended by other staff members. McMurray openly talked about sex and how he wanted to spank women. He further boasted that he recognized no boundaries when it came to treatment of women.

24. Other women staff members went to Plaintiff to complain about McMurray's touching them and making sexual remarks. Plaintiff conveyed these complaints to Ms. Colengelo, who warned McMurray that he would be charged with sexual harassment if his behavior did not change.

25. One nurse at the Facility informed Plaintiff that she had witnessed McMurray spanking a female resident in an elevator. When Plaintiff reported this information to Ms. Colengelo, Ms. Colengelo replied that she feared that any employee who complained about McMurray to Mr. Stops would be discharged.

26. At one meeting in July 2004, McMurray asked social worker Lauren Ciuti to move over one seat. After he sat in the chair she had occupied, McMurray asked Ms. Ciuti who she had just been thinking about because her seat was so hot.

27. Ms. Ciuti was very upset by this incident and reported it to Plaintiff.

28. Plaintiff, in turn, made her second complaint of sexual harassment to Mr. Stops. Again, no remedial action was taken.

29. In late August, a female resident named Jaskolowski complained that McMurray was physically touching the female residents, including patting their buttocks and leaning into their breasts while putting his arms through theirs. Plaintiff met with Mr. Stops and advised him that she wished to file a grievance on behalf of Ms. Jaskolowski.

30. Mr. Stops directed Plaintiff not to submit any grievances against McMurray and told her that he would address McMurray's behavior. Once more, Mr. Stops took no corrective action.

31. Director of Admissions Tina Carini warned Plaintiff that if she complained again about McMurray, she would be dismissed.

32. Despite his clear discomfort with Plaintiff's complaints about McMurray's conduct toward the female employees and residents at the facility, Mr. Stops never criticized her performance.

33. To the contrary, Mr. Stops consistently told her she was doing a good job and never criticized any aspect of her work.

34. On one occasion, another employee advised Plaintiff that she was in physical danger from Director of Nursing Services William O'Brien, a friend of McMurray's who himself had been the object of complaints of abusive treatment by female employees, and that she should leave the facility immediately or she "was going to get hurt." Plaintiff then told Mr. Stops that she had to leave, and went home.

35. That afternoon, Mr. Stops called a meeting of the Facility's staff and told them that he did not want to "lose" Plaintiff and that she must be treated properly. When Plaintiff returned to work the following day, Mr. Stops asked her not to look for another job.

36. On October 7, 2004, Mr. Stops met with Plaintiff and told her that the quality of her work was excellent and that she was very effective in dealing with the Facility's residents and their families. However, he then stated that because Plaintiff was not a "good fit" with McMurray and O'Brien, he was terminating her immediately.

37. As a result of Defendants retaliating against Plaintiff for opposing unlawful employment practices, she has suffered monetary damage, injury to her reputation and emotional distress, and has lost professional opportunities.

## PLAINTIFF'S FIRST CAUSE OF ACTION

38. Plaintiff repeats each and every allegation contained in paragraphs 1 through 36 inclusive as though fully set forth herein.

39. Defendants, by terminating Plaintiff in response to her complaints of sexual harassment, willfully retaliated against Plaintiff for opposing unlawful employment practices in violation of Title VII.

6

## PLAINTIFF'S SECOND CAUSE OF ACTION

40. Plaintiff repeats each and every allegation contained in paragraphs 1 through 36 inclusive as though fully set forth herein.

41. Defendants, by terminating Plaintiff in response to her complaints of sexual harassment, willfully retaliated against Plaintiff for opposing unlawful employment practices in violation of §296 et. seq. of the Executive Law.

## PLAINTIFF'S THIRD CAUSE OF ACTION

42. Plaintiff repeats each and every allegation contained in paragraphs 1 through 36 inclusive as though fully set forth herein.

43. Defendant, by terminating Plaintiff in response to her complaints of sexual harassment, willfully retaliated against Plaintiff for opposing unlawful employment practices in violation of §8-01 et. seq. of the Administrative Code.

## JURY DEMAND

44. Plaintiff demands trial by jury on all counts.

**WHEREFORE**, Ms. McKenna respectfully prays that this Court:

45. Issue a declaratory judgment that the acts and practices complained of herein are in violation of Title VII, the New York State Executive Law, and §8-01 et seq. of the New York City Administrative Code;

46. Order Defendants to make Plaintiff whole by providing appropriate back pay and front pay in an amount to be shown at trial;

47. Grant judgment to Plaintiff and against Defendants for mental distress and pain and suffering experienced by Plaintiff in an amount to be shown at trial;

48. Grant judgment to Plaintiff and against Defendants of punitive and exemplary damages in an amount to be shown at trial;

49. Grant to Plaintiff her attorney's fees, costs, disbursements, and interest;

50. Retain jurisdiction over this action until Defendants fully have complied with the orders of this Court, and require them to file such reports as the Court deems necessary to evaluate such compliance; and

51. Grant such further and additional relief as may to this Court seem just and proper.

Dated: New York, New York
      September 26, 2006

                        KRAUS & ZUCHLEWSKI LLP
                        Attorneys for Plaintiff
                        Mary McKenna

By: _____
     Geoffrey A. Mort (GM5254)
     500 Fifth Avenue, Suite 5100
     New York, New York 10110-5197
     (212) 869-4646

## *AFFIDAVIT OF SERVICE*

| | |
|---|---|
| **STATE OF NEW YORK** | ) |
| | ) ss.: |
| **COUNTY OF NEW YORK** | ) |

Judith Binus, being duly sworn, deposes and says:

I am not a party to the action, I am over 18 years of age and reside in New York, New York.

On September 28, 2006, I caused to be served a true copy of the annexed Plaintiff Mary McKenna's Complaint and Jury Demand by Federal Express, addressed to counsel as indicated below:

> Clifford P. Chaiet, Esq.
> Naness, Chaiet & Naness, LLC
> 375 North Broadway, Suite 208
> Jericho, New York 11753

_____
Judith Binus

*Sworn to before me this*
*28th day of September, 2006*

_____
*Notary Public*

PEARL ZUCHLEWSKI
Notary Public, State of New York
No. 31-50/1476
Qualified in New York County
Commission Expires 9/9/07